Yes, Your Honor, if we're ready. Good morning, Your Honors. Renee Maness on behalf of the petitioner, Mr. Kory Pedersen. We're here on an appeal of a habeas case where the question was trial counsel's ineffectiveness in presenting the defense of self-defense. We believe, and we believe that the state has now acknowledged in their responsive briefing that self-defense was a clearly available defense to Mr. Pedersen under Oregon law. The trial counsel stated in his deposition that- Well, there was a self-defense defense. It was just a different self-defense defense than the one that your argument should have been made, right? It was an inaccurate statement of Oregon law on self-defense. Right, this is what I don't understand. I mean, I understand that the trial counsel thought that he had to intend to kill the person in order to claim self-defense, essentially, and that you're saying no, that if he was simply, under Oregon law, if he was simply trying to wander away or otherwise use force to get rid of him, that would be self-defense. Is that basically, do I have that much right? All right, but this is, I mean, what I couldn't understand from your briefing and still don't understand is it did go to the jury, the question of whether he intended to shoot him on the merits of the conviction, and they said, yes, they, he intended to shoot him. So why doesn't that just make, no, nevermind, whether he had the right or the wrong self-defense defense? We don't know which shot the jury focused on, right? We do not know if the jury completely disbelieved Mr. Petterson's testimony, which was twofold. First, my first shot intended to miss the deputy, and my second shot was not an intentional shot. I believe that it fired when it hit my hand. He did not recall actually firing. What the jury, we do not know which shot the jury focused on and the problem was, trial counsel told the jury that in order to consider self-defense, he had, they had to decide that Mr. Petterson's testimony was false. He was telling the jury to disbelieve Mr. Petterson's testimony under oath. I guess, just to, Ms. Mays, I guess I'm, I have a similar question, maybe it's the same question as Judge Berzon, which is there was a self-defense instruction. The defendant gave testimony. There was a means for the jury, if they believed that that was a valid defense, to vindicate that defense, and they did not. And so given the EDPA standard of review, given the Strickland standard that applies, what basis is there to conclude that the result would have been different  if the jury, it was presented to them, it was an option? It was presented to them on an inaccurate basis of Oregon law. If you look at trial counsel's argument, he is inaccurately stating Oregon law on self-defense and under the Supreme Court's precedent, including Hinton versus Alabama, that is de facto ineffective assistance of counsel. If he fails to understand what Oregon law requires for self-defense, and that is why he failed to support the self-defense. If we agree to- Can I summarize what I think you were saying? That the jury could have thought that he wasn't trying to shoot the officer with a first shot, but didn't think that was a self-defense defense, but thought that he was trying to shoot him a second time, even though his defense was that he, that was an accident. So essentially, but that requires, and that's because they weren't, as to the first shot, weren't correctly informed as to self-defense, but then what about the second shot? Why wouldn't that still stand? And the second shot is, I'm sorry, Your Honor, and the second shot is where we get to the failure to call the appropriate experts, both Dr. Brady and Mr. Knowles, who would have confirmed Mr. Petterson's belief. I mean, Mr. Petterson could only testify to his belief. I don't recall firing the second shot. I think it must have happened when the deputy's shot hit my hand, and the deputy's shot clearly hit his hand. There were available experts that would have said, yes, that is more than likely what happened. To a reasonable degree of medical certainty, Dr. Brady could have supported that that second shot was inadvertent, and Mr. Knowles, a criminalist with decades of experience, could have said, I looked at the forensics, I looked at the trigger pull, I looked at the force at which the shot from the deputy would have hit Mr. Petterson's hand. Absolutely, that could have been an inadvertent shot. The jury never heard that information. Going back to the self-defense part of it, I mean, here's my question. Even if Oregon law, as you say, would have permitted the simultaneous consideration of, it was a warning shot, I never intended to hit him, and I was acting in self-defense. We also have this theory that the second shot was an accident. Why couldn't a reasonable counsel make the strategic judgment that, even if these are all legally consistent with each other, it's an awful lot to ask of the jury to think of these three theories simultaneously, so I'm just gonna focus on what seems like the best one, which is, I didn't intend to kill him. And that'll be my focus. And I mean, he did have a somewhat garbled discussion of self-defense, but couldn't it have been a reasonable strategic decision not to focus on self-defense? Several responses. First, under Hitton, it is never a reasonable strategic decision if the lawyer does not understand the law on which he is making that decision. Second, these are actually totally consistent defenses. If you understand the law, he doesn't need to want to kill him in order to have self-defense, and this is also a non-intentional shooting. He is not guilty. They are not inconsistent. The reason that they get garbled is because he doesn't understand the law on self-defense. So he has to argue both, he didn't intend to shoot him, but if you disagree with that and if you believe he did, then we have self-defense. That's what makes it garbled. They go together totally consistently. And if counsel had understood the law, he would have seen that, and he could have presented a coherent, consistent defense, and he had an obligation to support that defense with the readily available experts. He acknowledged in his deposition he never inquired if a medical expert could help him. He never considered using a use-of-force expert, even though that is one of the components of Oregon law. Mr. Petterson certainly testified he perceived that the use-of-force was inappropriate, but in order to establish the reasonable belief, Oregon law allows presentation of an expert, and Captain Herbst was available. This was a- How would the expert be relevant to the defendant's reasonable belief? I mean, the defendant had him talk to the expert beforehand, so whatever the expert says, that doesn't bear on what the defendant understood about the reasonableness of the use-of-force, does it? It is not a situation where only individuals who are well aware of police training tactics can talk about reasonable use-of-force. We have the ability for individuals to say, I perceived an excessive use-of-force, and then to have an expert come in and to say that perception is reasonable, and under Oregon law, there were several cases in which such experts were presented, and they were available to be presented. I see that I'm down to one minute and 20 seconds, 15? One other question, and we'll give you a little time to go. My other question is whether the, your argument then depends on both things being true, that is, the failure to properly explain self-defense, and the need for the expert as to the second shot, right? Because if the second shot is okay, then the first one doesn't matter because they think, isn't it, right? And don't both things have to be true, your argument you want to? I don't know that both things have to be true. I certainly think in connection that they are a stronger claim. I think we have under Hinton and Strickland de facto ineffective assistance because he clearly did not understand Oregon law and self-defense. They didn't have a prejudice problem unless you can get by the second shot. So that's why they both have to be true. And I believe this case laws, as we set forth in the appellants opening brief and the reply brief, shows you that any time a lawyer is making a strategic or is making a decision based on a misunderstanding of the applicable law, and is failing to consult with appropriate experts that are available. I'm trying to work with the prejudice, Strickland prejudice. In any event, what this led me to question is whether as to the second shot, your argument depends upon the need for an additional expert as to the accidental nature, but there was an expert. I mean, part of the problem was IAC not to have another more specific expert than the expert you have. You did have an expert who said that it was unlikely. Or likely. Our position is Mr. Hoyer was not an expert. He was not. If you read Mr. Hoyer's testimony, the only thing he's ever been qualified to be an expert in is on bullets and trajectory. He is not an expert who can testify about the physiological response to having a shot, a gunshot on your hand. He isn't like Dr. Brady was. He was not an expert who could testify to the forensic analysis that Mr. Knowles could provide. He was not that expert. And if you look at Mr. I'm sorry, if you. I think the point Judge Berzon is making is that this wasn't a complete failure to put forward this theory. The theory that this was an accident on the second shot was the trial theory. The jury heard that theory. They heard an expert testify to that. And your argument is that they should have had an additional expert. But the underlying theory was there. The theory was there. Mr. Hoyer was not a qualified expert on that issue. He testified in his opinion. If you hit me in the hand, I'm gonna reflectively fire. That's an opinion, that's not expertise, and he never claimed to be qualified. If you look at his expertise as he testified, and that's in the supplemental excerpts of record at page 10, his only area of expertise is bullets and trajectories. That's it. Where are the bullets fired? That's what he was an expert in. He was not an expert in what happens when you're holding a gun and a bullet hits your hand. Would you reflectively fire? So no, there was no expert on that in support of Mr. Petterson's personal belief that that was what- We're out of your time, and we'll give you a minute or so. Thank you, Your Honor. That was very helpful. Ms. Hersh. Hey, please support counsel Joanna Hersh for the state. I'd like to begin by just clarifying the defense that was put forth in this case. Really, there were sort of, as counsel put it, two layers of analysis. And the first one was my client has taken the stand, and he has said that I did not intend to kill Deputy Miller when I fired that first shot. If you believe his testimony, that requires an acquittal. Counsel levied as a second- No, the position is it doesn't require an acquittal because it was the second shot. Okay, I understand what you're saying. That is in addition with the second shot was an accidental shot. So taking these two together. That's the problem here, that you can't read into the jury's conclusion for strict and precious purposes that they didn't think he shot a warning shot as opposed to what he was trying to do. No, I don't think you can read into the jury's decision that they were focusing on one shot over the other. But when we talk about what was counsel's choices when presenting this defense and what was reasonable, counsel obviously chose to defend the second shot by relying on petitioner's testimony that it was accidental. And when it came to the first shot, his strategy was to ask the jury to believe petitioner that the first shot was not intentionally fired in order to kill Deputy Miller, which would support an acquittal of that charge. Now on appeal in this federal habeas case, the issue that petitioner raises is, well, why didn't counsel say that the first shot was a matter of self-defense? But the problem with that argument is that in either case, the jury needs to believe petitioner's testimony that I was only firing a warning shot. And so if the jury believes I was only firing a warning shot, there's no need to, I think Judge Miller touched upon this, to argue a very complicated self-defense theory when the much cleaner theory is, well, if he didn't intend to do anything other than fire a warning shot, then it's not aggravated murder. And so- You may be right, but let me just play that out. If I understand it, the contrary argument would be, well, the jury could have thought that he was looking at him shooting a warning shot. Well, it was less likely to think he was shooting a warning shot if they didn't understand that a warning shot would be self-defense. I guess that would have to be- I suppose I'm not sure that I actually fully understand that argument because I think either way, you have to believe, you have to believe that he was trying to fire a warning shot. And if the jury believes that, then there is no need to argue self-defense with regard to the first shot. And with regard to the second shot, again, self-defense- I mean, they could have believed that the warning shot was in self-defense. It was nothing that precluded them from reaching that conclusion if they wanted to. Right, and in fact, self-defense was presented. It's not that this was a completely, a theory that was not presented at all. It was presented as a sort of second level analysis by counsel and they were instructed on self-defense and they absolutely could have bought that argument. I just don't think they would have needed to had they believed petitioner's testimony, which is really what was the crux of the defense argument in this case. And then when we get to the second shot, again, self-defense doesn't make sense because the testimony was it was an accidental shot. Well, self-defense applies when you're talking about justifying an intentional act. I do not understand that to be arguing that self-defense applies to the second shot. Okay, well, I may have misunderstood that. I was a little confused to be honest about the theory with the second shot. But with regard to that shot, as we've pointed out in our briefing, that theory was advanced and was presented to the jury. Petitioner took the stand and said, I don't remember firing that shot. And if I did, it was most likely accidental. There was an expert. I acknowledge that he is an expert in ballistics, but he did testify that it's certainly a possibility. And these medical experts that were presented during the post-conviction proceedings, it's hard to imagine that all reasonable counsel in counsel's position in this case would have believed that there were medical experts out there that could testify to a reasonable degree of certainty that this is what happened. None of them actually examined Petitioner at the time of the trial. And the idea that they could testify that it's more likely than not, I'm not sure that all reasonable counsel would have actually thought that there were experts out there that could have said that. And in any event, I'm not sure that that would have really withstood scrutiny on cross-examination merely because they did not have the benefit of examining Mr. Petterson's hand. And so I think that these opinions probably would not have made the difference that Petitioner argues that they would have made. And certainly when you look at the Strickland standard, it's hard to imagine that these would have changed the jury's verdict in a meaningful way. And on that note, I would like to point out that there's sort of a fatal flaw, I think, to the prejudice argument, which is that Petitioner took the stand at trial and he testified quite clearly that at the time that he fired that first shot, Deputy Miller had not yet pulled his firearm out of its holster. And in fact, he acknowledged that Deputy Miller was reaching for his radio to call for backup. So I don't know that any number of expert witnesses who could have taken the stand and talked about use of force or talked about the accidental trigger pull could have overcome that kind of fatal admission by the Petitioner that I fired my first shot before a gun even entered the picture on Deputy Miller's part. And the reality is that faced with that testimony, it's quite reasonable for a jury to find that even if we believe everything you say, and even if we were given the most clear self-defense instruction ever, that that is a reasonable use of force to respond to what was actually happening at the moment. And because of that, I think it's fair to say that the post-conviction courts ruling denying post-conviction relief was not an unreasonable application of the Strickland standard with regard to, certainly with regard to prejudice, but I also think that they fail on the performance problem. And very quickly, I do wanna point out that the expert witnesses about the training and standards, that is what those expert witnesses could talk about. They could talk about whether or not Deputy Miller, whether his actions were in line with the training and standards, which does not really help inform the average person's belief about. Yeah, it does. I mean, if you have a perception that they're going beyond or engaging in, he has some force and that is a reasonable perception because it's against their training and the people who train them also think it's excessive force. That's informative, is it not? I think it has some relevance. It certainly does. It's not completely irrelevant. The question is whether all reasonable attorneys in counsel's position would have felt that that expert testimony would make such a difference that it would be the thing that changes the trajectory of this trial. And considering that the focus is on what is known to a petitioner at that moment, his own state of mind, I don't know that these experts would have added that much to the equation. And also this, again, this boils down to an issue of prejudice, which is what these experts have made a difference in the end. And in light of the fact that there was video evidence of this entire incident that the jury was able to see firsthand, they had more than enough information from which to judge whether or not petitioner's response was a fair and justified response to what was happening to him by Deputy Miller, regardless of whether or not that complied with standards and training. They were able to see the use of force that was used and whether the response was reasonable. And that coupled with his testimony that he knew a gun had not been pulled, it's hard to imagine that these experts would have really changed the outcome of the trial in any meaningful way. Okay. Thank you. We have eight minutes. Thank you very much. Yes, your honors. In terms of the video, I want to ask you about Ms. Hershey's response to the, on the prejudice front, which is basically that there, whatever impact there was on this rec, of the argument that he was only trying to, to have a warning shot, it wouldn't have been any different if that had been tied into self-defense. In other words, either the jury bought it or the jury didn't buy it, but it wouldn't have bought it anymore or less if it was called self-defense. I think that there is very good reason to believe that if this case had been appropriately tried, the jury would have understood that it was in fact, and it was a shot intended not to hit the deputy in self-defense. Trial counsel informed the jury. That was his defense was that it was a shot intended not to hit the deputy, right? Correct. Well, it didn't call it self-defense. And that would have- It might have been more or less believable if it's called self-defense. Because trial counsel told the jury, and this also addresses Judge Breese's question about whether or not the jury could have found it was a warning shot in self-defense. Trial counsel told the jury that in order to find self-defense, you had to disbelieve Mr. Petterson that this was a warning shot. You had to find that Mr. Petterson lied because he only had a right to self-defense if he intended to kill the deputy. That was in trial counsel's opening and closing statement and is quoted in the AOB. Okay, but I still am having trouble understanding why it matters with regard to whether they believe that he was firing a warning shot, whether they're told that he was firing a warning shot because he felt like firing a warning shot or because he was firing a warning shot in self-defense. Because they were never given the self-defense analysis under the law that was correct to analyze the context. And they were never given the experts who would have supported self-defense. While Ms. Hershey may believe those experts might not have been helpful and trial counsel may have decided not to call them, core Strickland principles, strategic decisions such as whether or not I call an expert are based upon reasonable investigation. Trial counsel never investigated whether a medical expert was available. He did not know, he didn't bother to check it out. Trial counsel never investigated whether or not a use of force expert could have helped. He just does not call them. These are not strategic decisions and they all return to the core problem that trial counsel is making all of his analysis about self-defense, about unintentional conduct based upon a misunderstanding of the law. He does not understand Oregon law. You're aware of your time, thank you very much. This is a very unfortunate case in the sense that it all began from nothing. So, by this whole altercation that's happened. And I thank you both for your quite helpful arguments. The case of Patterson versus Oregon Court of Parole is submitted, we will go to the next case which is Calderon Mejia versus Barr.
judges: Berzon, Miller, Bress